MORGAN, J.,
Dissenting.
With the principles of law set forth in the majority opinion by Judge Skeel, I have no quarrel. It .is true, as stated by Judge Skeel, that giving away articles of food is a recognized method of advertising by grocers and that in the ordinary ease the owner is not liable for the dangerous condition of the floor caused by customers depositing food products on the floor, unless the owner has had or should have had notice of the condition.
But this case, on its facts, is not an ordinary case. On the day in question the store was crowded with customers. A clerk in the aisle was passing out olives on toothpicks and ail persons passing near her were asked to take an olive. She announced that olives like the sample could be purchased at the cheese counter a few feet away.
While plaintiff did not take an olive, she testified as to others in the store, “everyone was reaching for them.” Clearly, the olives were being given away with the expectation that everyone getting an olive would eat it and would be influenced to walk a few steps to the cheese counter and there purchase olives of the kind just sampled.
The evidence does not show for what length of time the clerk had been handing out olives in this manner, but it does disclose that olives were being given away when plaintiff walked first to the cheese counter; that she then made her purchase, took the purchase check to the cashier and paid for the purchase, and then stopped to buy and consume a “malted milk.” Plaintiff then returned to the cheese counter with her receipted check to pick up the cheese she had purchased. It was then, after walking a few steps, that she slipped and fell on the floor when a few feet away from the clerk that was giving away the olives.. It is thus evident that between the time plaintiff was offered an olive and the time that she slipped and fell to the floor, the clerk must have given away scores of olives to as.many persons.
The evidence does not show that there was any receptacle provided or handy into which the olive pits and half eaten olives could be deposited. What were the olive eaters to do with them? Some of the more careful possibly would deposit them in their handbags or their handkerchiefs. But, human nature being what it is, we know that many, if not most of the pits and half eaten olives would be dropped on the floor near to the place where they were being handed out.
It is my opinion that the defendant in this case should reasonably have anticipated that just this would happen. Just this did happen. The plaintiff turned from the cheese counter, took two or three steps, and then, as she testiled, she “stepped on something that was hard and mushy” with the result that “my right foot slipped out and the left one went back under me.” After falling she found that “at the end of my foot was a partly eaten olive and where my foot had slipped, the floor was all wet.” As to the condition of the floor at the time, the plaintiff testified that “there was quite a few olive pits laying around and half eaten olives.”
There cannot be the slightest doubt but that her fall was caused by this condition of the floor.
*332 Plaintiff further testified that immediately after her fall, the olive demonstration was stopped and an employee of the store swept up the olive pits. A box of sawdust was also brought and the sawdust was sprinkled on the floor. It is not difficult to understand how wet and slippery was the condition of the floor that required that sawdust be spread on it to make it safe for the patrons of the store.
On cross-examination, the defendant brought out additional facts, some of which would not have been admissible on direct examination. Among these facts were, after plaintiff fell, an employee named “Edith” was called to the scene. Edith looked at the spot where plaintiff had fallen. After taking this look, she said to plaintiff, “you sure took a skid” and that “she was going to call a doctor.” All of this evidence was developed by defendant on cross-examination of the plaintiff.
The evidence shows that as a result of the fall the plaintiff sustained substantial injuries.
Whether defendant should not reasonably have anticipated that the result of handing out olives on toothpicks to persons in the store would result in olive pits and half eaten olives being dropped on the floor, making the floor dangerous for the use of patrons of the store, seems to me clearly to have presented a question which should have been submitted to the jury.
Therefore, it seems clear to me that the court erred in directing a verdict for defendant at she conclusion of plaintiff’s evidence.